See, our next case for argument is Sovereign General Insurance Services v. National Casualty. Why don't you come up here? I was waiting for the invitation. I guess someone has to start off first, and I'm the only one here. I'd be happy to answer any questions of the Court. I would just make a few comments. One is, because I find the argument in the appellate brief somewhat mystifying, it focuses on this apparent disagreement on the merits of this London arbitration about whether any settlement value should be placed on mismanagement of claims handling, but there is no coverage issue regarding mismanagement of claims handling. In fact, the policy specifically covers Insurance Claims Administration, and there's nothing in the record, there's nothing in any reservation of rights letter, which says that the carrier is not going to cover claims handling. So I was hoping to hear what counsel's explanation for why that created a conflict. The other point is... Well, the more that Sovereign's involved in claims handling, that then they start to rise to the level of a managing general. Would you then take them out of the policy? They didn't make that argument directly, but there was no issue in the London arbitration regarding their status as a managing general agent. The only coverage issues were the territoriality, whether the carrier had any obligation on a matter that was going forward in England, because there was a territorial provision that said it had to be in the United States. And the other coverage issue had to do with their status as a managing general agent. But before the London arbitration, that status was in no way at issue, not at all. Well, Boyce didn't specifically allege that Sovereign was a managing general agent, but, again, they allege that there was shoddy claims handling. And if you rightfully or wrongfully are involved in claims handling, are you starting to assume the role of a managing general agent? That the cumulus statute, the 2860 statute, requires that the coverage issue must be able to be affected by the proceedings in London, but there was those proceedings simply had to do with whether Sovereign had complied with the agreements they'd entered into with Lloyds, and it was undisputed they'd agreed to manage claims. So that wasn't something that affected coverage one way or the other, and as I said, their status as a managing general agent was in no way shape or form at issue in London. It was simply whether they had breached that, the agreement they'd entered into with Lloyds. Roberts. It's about the arbitration proceedings in London. Any findings that the arbitrators would have made or anything like that that could have in any way affected the lawsuit in the United States over coverage? Not that I see. I handled the appeal, and the only issue that was addressed on the appeal at all was territoriality. And even the ---- Well, no. Let me be a little more specific. Suppose in the London ---- to follow up on Judge Carney's question, suppose in the ---- we know that the London arbitration proceeding, it settled before it went through the proceeding, before they issued an award, right? Correct. But if they had gone through the process of having a hearing and an award being issued, and the arbitrators made a finding that they ---- that Sovereign improperly engaged in claims handling of any number of claims, would that ---- could that ---- is there any way that finding by the arbitrators in London, such a finding by the arbitrators in London, is there any way that could have had any issue preclusion or issue whatever in the United States coverage case? Not that I see. And plus, I want to emphasize that what they did, in other words, managing an independent adjuster is entirely undisputed. That fact was undisputed in the London arbitration. The defense that they wanted was peculiar. And that is that because they say it was illegal for them to manage claims, therefore they couldn't be held responsible for that. And they did have apparently some disagreement with the London solicitor on the merits of that argument. But this has nothing to do ---- it doesn't sway any coverage issue one way or the other. And that was really their only ---- I'm sorry. Why isn't the whole matter now moot since it has been settled within the policy limits? How could someone be hurt? Well, I would agree with that. They did sue national casualty and demanding that national casualty settle. And when they filed the suit, we were in the midst of settlement negotiations. And then we did settle, yes. And we settled before the summary judgment. This case has any life to it as if they were to prevail on the Cumas issue, they could get ---- they could recover what they paid Aguilar. Yeah. Right? Isn't that what that ---- isn't that what this is all about? Yes, I would agree with that, Your Honor. I imagine they ---- Mr. Aguilar probably had a big fee. I mean, the lawyers in London pay humongous fees. That's really the only possibility is what they paid Aguilar, isn't it? Yeah, that's correct. That's the only issue. And I want to ---- there's a number of reasons why national casualty didn't have to pay Aguilar. First of all, and I've been doing this a long time, the problem that arises and that creates a Cumas conflict is, first of all, the carrier selects its own counsel. That's step one. That never happened here. National casualty doesn't have any counsel in England. So they asked the insured to select one. In fact, even their letter, their reservation letter said, you can go ahead and select one. And they did. The insured selected London counsel. And it was only later that they developed a disagreement on the merits. But they wanted ---- even though there was now London counsel handling the arbitration, the Aguilar firm still wanted to be paid. And national casualty said no. I mean, we only have one counsel in England. That's the counsel that's handling it. You're not in England. You're not qualified to handle an English arbitration. You're not English lawyers. You don't have any E&O insurance. And Civil Code 2860, to the extent it even applies to a London arbitration, allows the carrier to set forth certain requirements for Cumas counsel. And there's no doubt that Charles Russell, the English solicitor, met those requirements. And that solicitor was accepted as the counsel selected by the insured. But Benjamin never got into any of that. No. He preferred to focus ---- you're right. He preferred to focus on the fact that there was never any conflict anyway. But we can ---- Let me ask you a question because I'm confused by it. As I understand it, your client filed a coverage action in State court. Correct. And the State court determined not only there was a defense obligation, but also an indemnity obligation before even the Lloyds case had resolved itself to see whether there was a claim or not? Yeah. That was unusual. The coverage litigation really focused on a duty to defend. But the ---- I think the decision ended up being broader than that. But it was really all or nothing. It was really all or nothing. I mean, either they had no obligation whatsoever or they were going to pay. I found it confusing. The State said there's a duty to defend and indemnify. And when did the State court say that? And did that just move any kind of coverage dispute between the carrier and the insured? Well, it did. At that point, national casualty was required to pay the whole settlement. And I was ---- I personally was negotiating the settlement. We never asked the insured to participate in it. It was just a matter of how much national casualty was going to pay. So my question, I can tell, is that you're not following. I'm trying to understand, given there was this decision in State court, defense and indemnity, which is surprising to me before the Lloyds case even resolves itself, but that's the decision. Okay. That would move. There was no longer a coverage dispute between the insurance company and the insured. Yeah, you're correct. That resolved any coverage issue. What's the monetary ---- the amount of the monetary dispute here? They claim it's $200,000. We say that that includes a lot of sums that shouldn't be included. The Aguilar firm had several hats, and that was one of the problems. I mean, not only were they handling the coverage action, but they had prosecuted a related action in the United States against Lloyds and the law firm representing Lloyds and Aon, and they also acted as the go-between between SGI and the London Council at the request of SGI and Sovereign. So they were doing a lot of things, and that was all reflected in their billing. Was that indicated in the record, that dispute, as to the amount? Yes, it's in our briefs. In fact, we put into evidence the action that the Aguilar firm, the related action filed by the Aguilar firm in the United States, and explained in our brief and in our summary judgment motion that that was part of the fees that were included in those bills that they presented. So really, that's all we're talking about, isn't it, is the amount that could be due to Aguilar? Well, that and if there was ever any obligation. Of course, we assert there's no obligation to pay any of the bills. But certainly, if there had been an obligation to pay something, we would also be saying it wouldn't be to pay all the bills. But, I mean. What do you mean the bills? The Aguilar firm submitted bills to National Casualty, which added up to over $100,000. Yes. So what we're talking about is just the amount that's due or not due to Aguilar. Correct. That's correct. So I wonder how come we're involved in all the complications of whether it was proper or not proper to have CUMA's counsel? Well, that's the basis upon which they would be paid. They were never retained by the insurance company. The insurance company never agreed to pay them. They paid $2.6 million to the English solicitor to defend the case. And so this is not a case of a carrier refusing to defend. In fact, they had to pay an exorbitant amount. And, in fact, the Aguilar firm was complaining that they were paying too much to the English solicitor. But that was largely because he was charging in pounds and because of the exchange rate. And that wouldn't make any difference here, whether they paid too much to the counsel in England. No. No, it wouldn't. It wouldn't. It was just one of the things that the Aguilar firm was complaining about. But let me emphasize one other thing, one really basic point. And that is we also dispute that Civil Code 2860 even applies to a London arbitration. If there's ‑‑ I've never been involved in any situation where there was a claim for CUMA's counsel outside of even the State of California. And if there was a suit in another State, I've never been ‑‑ I've never heard anyone argue that the CUMA's rule applies in another State. And here we're talking about another country. Why was the arbitration proceeding in London to begin with, just under the agreement between Lloyds and ‑‑ Yes. They called for disputes to be arbitrated in London. Okay. Thank you, Your Honor. Anything further? No. Thank you. Okay. Thank you very much. The matter of Sovereign General Insurance Services v. National Casualty is submitted.
judges: Carney, Hug, Paez